UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARMELLA NICHOLAS,

                Plaintiff,

v.                                         5:15-CV-1086
                                         (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.        SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 11.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Carmella Nicholas ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on March 13, 1966. (T. 66.) She completed high school. (T. 224.) Generally, Plaintiff's alleged disability consists of bipolar disorder, depression, and anxiety. (T. 223.) Her alleged disability onset date is January 31, 2008. (T. 66.) Her date last insured is December 31, 2013. (*Id*.) She previously worked as a dishwasher. (T. 20.)

### B. Procedural History

On July 17, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 66.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 12, 2013, Plaintiff appeared before the ALJ, Elizabeth W. Koennecke. (T. 27-40.) A supplemental hearing was held on March 19, 2014. (T. 49-53.) On May 5, 2014, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-26.) On July 8, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-22.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2013 and Plaintiff had not engaged in substantial gainful activity since January 31, 2008. (T. 12.) Second, the ALJ found that Plaintiff had the severe impairment of a mental impairment. (T. 13.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 15-17.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels. (T. 17.) The ALJ determined that Plaintiff retained the ability to:

> understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others in carrying out simple, repetitive tasks; and handle stress defined as performing work with occasional decision making related to the performance of simple tasks involving goal-oriented work rather than work involving a production rate pace.

(T. 17.) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 20-21.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes one argument in support of her motion for judgment on the pleadings. Plaintiff argues the ALJ's RFC finding was not supported by substantial evidence and was the product of legal error. (Dkt. No. 9 at 9-15 [Pl.'s Mem. of Law].)

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues that the ALJ properly evaluated the medical opinions of record in determining Plaintiff's RFC. (Dkt. No. 10 at 5-12 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

4

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's Analysis of Medical Opinion Evidence and RFC Determination

Plaintiff's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545. The RFC is based on all the relevant medical and other evidence of record, and takes into consideration the limiting effects of all of Plaintiff's impairments. *Id.* The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. § 404.1527(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight she assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff received mental health treatment from Jeannine Bordonaro, M.D. between 2004 and 2012. (T. 37-38.) The record contained treatment notations from Dr. Bordonaro dated February 25, 2010 through October 17, 2012. (T. 411-454.) The record also included a medical source statement completed by Dr. Bordonaro dated October 30, 2013. (T. 292-294.)

In her medical source statement Dr. Bordonaro indicated Plaintiff suffered from bipolar disorder. (T. 292.) Dr. Bordonaro opined that Plaintiff was "unable to meet competitive standards" in her ability to: complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and use public transportation. (T. 293.)

Dr. Bordonaro opined that Plaintiff was "seriously limited, but not precluded" in her ability to: remember work-like procedures; understand and remember very short and simple instructions; maintain attention for two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; deal with normal work stress; be aware of normal hazards and take appropriate precautions; interact appropriately with the general public; and travel in unfamiliar places. (T. 293.)

7

Dr. Bordonaro opined that Plaintiff was "limited but satisfactory" in her ability to maintain socially appropriate behavior. (T. 293.) She opined Plaintiff was "unlimited or very good" in her ability to adhere to basic standards of neatness and cleanliness. (*Id.*) Dr. Bordonaro wrote that Plaintiff would have difficulty in the work place due to "poor concentration" and an "inability to carry out assigned duties at a quick pace and paranoia/suspiciousness directed at co-workers." (*Id.*)

Dr. Bordonaro further stated that Plaintiff had deficiencies of concentration, persistence, or pace that would result in failure to complete tasks in a timely manner. (T. 294.) She opined Plaintiff would be "off task" more than 20% of the time during an eight hour workday. (*Id.*) She opined that Plaintiff would be absent more than four days per month due to her impairment or treatment. (*Id.*)

After Dr. Bordonaro closed her practice, Plaintiff continued her mental health treatment with providers at St. Joseph's Hospital Health Center. (T. 354-410.) Providers with St. Joseph's did not provide a medical source statement; however, their treatment notations contained mental status examinations. On November 28, 2012, providers observed that Plaintiff was well-groomed, her affect was appropriate, her mood was anxious, her thought content was reality based, her behavior was calm, her speech was normal, her thought process was disorganized, and her concentration was poor. (T. 392.) On January 10, 2013, Plaintiff was spontaneous and cooperative; her eye contact was normal; her appearance was within normal limits; she was alert; her orientation was within normal limits; her attention and concentration were good; her memory was intact; her speech was within normal limits; her affect, mood, and thought content were within normal limits; and her insight and judgment were good. (T. 401-

8

402.) On January 23, 2013, Plaintiff was spontaneous and cooperative; her eye contact was normal; her appearance was normal; she was alert; her orientation was within normal limits; her attention and concentration were good; her memory was intact; her speech was within normal limits; her affect, mood, and thought content were within normal limits; and her insight and judgment were fair. (T. 367-368, 401-402.)

On September 17, 2012, Plaintiff underwent a consultative psychiatric examination by Dennis M. Noia, Ph.D. (T. 282-285.) Dr. Noia performed a mental status examination. He noted that Plaintiff was responsive and cooperative. (T. 283.) Dr. Noia observed that Plaintiff's manner of relating, social skills, and overall presentation were adequate. (*Id.*) He stated her thought processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking. (T. 284.) Dr. Noia observed that Plaintiff's mood was neutral. (*Id.*) He further noted her affect was congruent, her sensorium was clear, and she was oriented. (*Id.*) He opined that Plaintiff's attention and concentration were intact; her recent and remote memory skills were intact; her cognitive functioning was estimated to be in the average range; and her insight and judgment were good. (*Id.*)

In a medical source statement, Dr. Noia opined that Plaintiff was capable of: understanding and following simple instructions and directions; performing simple and some complex tasks with supervision and independently; and maintaining attention and concentration for tasks. (T. 284-285.) He opined Plaintiff was capable of learning new tasks; making appropriate decisions; and able to relate to and interact moderately well with others. (T. 285.) He stated Plaintiff appeared to have some difficulty dealing with stress. (*Id.*)

The ALJ afforded varying weight to Dr. Bordonaro's medical source statement. The ALJ afforded "no weight" to Dr. Bordonaro's opinion that indicated Plaintiff would be unable to perform certain mental tasks at competitive standards. (T. 18.) The ALJ afforded "limited weight" to Dr. Bordonaro's remaining opinion. (*Id.*) In assessing Dr. Bordonaro's opinion, the ALJ addressed each of Dr. Bordonaro's limitations and provided reasoning for not adopting those limitations. (T. 18-19.) The ALJ reasoned that Dr. Bordonaro had not treated Plaintiff since late 2012 and therefore her opinion did not apply to the entire period in question. (T. 18.) The ALJ also essentially reasoned that Dr. Bordonaro's opinion, that Plaintiff was unable to meet competitive standards, was not supported by her own treatment notations, were inconsistent with Dr. Noia's examination and statement, and were inconsistent with treatment notations provided by St. Joseph's Hospital. (T. 19.)

The ALJ afforded Dr. Noia's opinion "considerable weight," however, the ALJ did not accept Dr. Noia's opinion that Plaintiff had moderate limitations in interacting with others and difficulty dealing with stress. (T. 19.) The ALJ relied on Dr. Noia's examination of Plaintiff and other treatment notes of record that did not document problems with appropriate interactions with others. (*Id.*) The ALJ also relied on Plaintiff's testimony that her social anxiety was triggered by crowds of 50 to 100 people. (*Id.*) The ALJ reasoned Dr. Noia's opinion, that Plaintiff had a difficult time dealing with stress, was inconsistent with Plaintiff's ability to "manage the stress of losing her long time psychiatrist, commencing treatment with others, separating from her husband and moving in with her parents." (T. 20.)

In weighing the opinion evidence in the record, the ALJ also relied on the State agency psychiatrist and Global Assessment of Functioning ("GAF") scores which ranged between 60 and 75. (T. 20.)[1] The ALJ afforded the GAF scores "some weight." (*Id.*) The ALJ took into consideration the State agency program psychiatrist's opinion Plaintiff did not have a severe mental impairment. (*Id.*)

Plaintiff first argues that the ALJ committed legal error when she discounted the opinion of Plaintiff's treating source, Dr. Bordonaro in favor of the consultative examiner, Dr. Noia. (Dkt. No. 9 at 11-12 [Pl.'s Mem. of Law].) It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional

---

[1] "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue,* 546 F.3d 260, 262 n. 1 (2d Cir.2008) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* at 32 (4th ed. 2000)). GAF scores between 51-60 indicates: "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, at 34 (4th ed. 2000.) GAF scores between 71-80 indicate that "If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." *Id*. at 34.

capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015).

An ALJ may afford more weight to the opinion of a consultative examiner over plaintiff's treating physician. *See Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin,* No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016). Therefore, the ALJ did not commit reversible error in affording greater weight to Dr. Noia over Dr. Bordonaro.

Plaintiff next argues the ALJ failed to engage in the multi-factored analysis laid out in 20 C.F.R. § 404.1527(c) and instead the ALJ selectively relied on treatment notes which indicated that Plaintiff's condition was "controlled" with medication. (Dkt. No. 9 at 12-14 [Pl.'s Mem. of Law].) Plaintiff asserts that had the ALJ adhered to the Regulations, Dr. Bordonaro's opinion would have been entitled to dispositive weight. (*Id.*)

The Second Circuit has held that no such slavish recitation of each and every factor is required where the ALJ's reasoning and adherence to the Regulation was clear. *See Halloran v. Barnhart,* 362 F.3d 28, 31-32 (2d Cir. 2004). Here, the ALJ did not commit legal error because it is clear from her decision that she adhered to the Regulations in assessing Dr. Bordonaro's opinion. The ALJ acknowledged that Dr. Bordonaro was Plaintiff's former treating psychiatrist for many years in accordance with 20 C.F.R. § 404.1527(c)(2)(i) and (iv). (T. 13.) The ALJ cited medical evidence in the record which she determined did not support Dr. Bordonaro's opinion and indicated her opinion was inconsistent with the record as a whole under 20 C.F.R. § 404.1527(c)(2)(ii)

and (iii). (T. 18-19.) Therefore, the ALJ did not fail to adhere to the Regulations in assessing the opinion of Dr. Bordonaro.

Although the ALJ adhered to the Regulations in her assessment of Dr. Bordonaro's opinion, a portion of the ALJ's reasoning for rejecting Dr. Bordonaro's opinion was misplaced. The ALJ specifically discredited Dr. Bordonaro's opinion that Plaintiff was limited in her ability to perform at a consistent pace because it appeared to be related to Dr. Bordonaro's statement that Plaintiff had reduced intellectual functioning. (T. 18.) However, when asked to provide a narrative to support her opinion regarding Plaintiff's ability to do work-related activities, Dr. Bordonaro wrote that Plaintiff "has had difficulty in the work place due to poor concentration, inability to carry out assigned duties at a quick pace and paranoia/suspiciousness directed at co-workers." (T. 293.) When asked to describe any other limitations that would affect Plaintiff's ability to work at a regular job on a sustained basis, Dr. Bordonaro wrote "as mentioned, poor concentration, paranoia, poor energy, depression [and] anxiety would negatively impact functioning." (T. 294.) When specifically asked if Plaintiff had a low IQ or reduced intellectual functioning, Dr. Bordonaro checked the box "yes" and wrote "I believe she has reduced intellectual [functioning]." (*Id.*)

Although Dr. Bordonaro indicated that she believed Plaintiff had reduced intellectual functioning, the doctor did not indicate, as the ALJ concluded, that Plaintiff's reduced intellectual function prevented her from performing work-related functions. Dr. Bordonaro's medical source statement clearly stated that Plaintiff's work limitations were due to her problems with concentration, paranoia, and poor energy. (T. 293-294.) Therefore the ALJ erroneously discounted Dr. Bordonaro's limitations based on her

13

statement that Plaintiff had reduced intellectual functioning because Dr. Bordonaro did not state Plaintiff's limitations were based on her reduced intellectual functioning.

Plaintiff argues that deficits in intellectual functioning was the "only factor" considered by the ALJ in assessing Dr. Bordonaro's opinion. (Dkt. No. 9 at 14 [Pl.'s Mem. of Law].) However, the ALJ did provide other reasons for not affording controlling weight to Dr. Bordonaro's opinion.

The ALJ also concluded that Dr. Bordonaro's opinion regarding Plaintiff's work limitations was inconsistent with her own treatment notations that "document[ed] only very scattered reports of fair concentration or distractibility." (T. 19.)

Dr. Bordonaro stated on February 25, 2010, that Plaintiff got distracted "at times." (T. 412.) On April 7, 2010, she noted Plaintiff reported that her "mind wanders at times" and on June 1, 2010 she noted Plaintiff's concentration was "fair." (T. 414, 416.) On September 28, 2010 she noted Plaintiff's concentration was impaired and she had trouble with short term memory. (T. 420.) On October 26, 2010 she noted Plaintiff indicated she was able to focus while watching TV or reading. (T. 422.) On November 30, 2010 she noted Plaintiff's concentration was "impaired." (T. 424.)

On January 11, 2011 Dr. Bordonaro noted Plaintiff's "mind wanders at times." (T. 427.) On March 16, 2011 she noted Plaintiff's concentration was "ok." (T. 432.) On May 4, 2011 she noted Plaintiff's concentration was impaired, she was easily distracted, and her thoughts wandered. (T. 434.) On August 2, 2011, she noted Plaintiff was trying to do word problems to help with her concentration and on October 4, 2011 she noted Plaintiff reported her concentration was impaired and she gets "confused [and] frazzled easily." (T.439, 441.)

On February 8, 2012, Dr. Bordonaro noted Plaintiff's concentration was impaired and her mind wandered "at times." (T. 445.) On August 15, 2012, Dr. Bordonaro observed that Plaintiff "feels confused at times, she stat[ed] she doesn't understand things even if it's written down for her" and her attention span was limited. (T. 451.) Dr. Bordonaro's final treatment note from October 17, 2012, indicated that Plaintiff's "mind wander[ed] [a lot]." (T. 454.)

Dr. Bordonaro's notations consistently noted some degree of reported decreased concentration or distractibility, and some objective notations of decreased concentration' therefore, the ALJ's statement that the doctor's notations consisted of only "scattered" reports of "fair" concentration and distractibility was an oversimplification. (T. 19.) However, as discussed further herein, objective notations from Dr. Noia and providers at St. Joseph's Hospital, supported the ALJ's determination that Plaintiff's concentration was not so impaired as to prevent her from performing simple, routine work as defined in the ALJ's RFC determination.

The ALJ properly reasoned that Dr. Bordonaro's limitations due to Plaintiff's paranoia were not supported by her treatment notations or the medical record. (T. 19.) Although Dr. Bordonaro stated in her medical source statement that Plaintiff's paranoia would prevent her from performing work related activities, these limitations were not supported by her own treatment notes. *See Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (because treating physician's medical source statement conflicted with his own treatment notes, the ALJ was not required to afford his opinion controlling weight). One notation indicated that Plaintiff felt "[a little] paranoid at her dad's birthday party" (T. 439); however, the remainder of her treatment notes consistently stated Plaintiff did not

15

suffer from symptoms of paranoia. (T. 414, 416, 430, 432, 434, 437, 441, 445, 448, 452.)

In addition to Dr. Bordonaro's treatment notations explicitly stating Plaintiff did not experience paranoia symptoms, the treatment records also contained notations that Plaintiff was able to attend a woman's group, attend family functions, socialize in public places such as a bowling alley or library, and volunteer. (T. 412, 417, 421, 423, 429, 431, 433, 437, 440, 445, 448, 453.)

Despite the ALJ's errors in assessing some specific aspects of Dr. Bordonaro's opinion, any errors were harmless because the ALJ provided other sufficient reasoning for assigning weight to the doctor's opinion and overall the ALJ's RFC determination was supported by substantial evidence. Ultimately, an error is harmless "where application of the correct legal principles to the record could lead to only one conclusion." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see also Zabala v. Astrue,* 595 F.3d 402, 409 (2d Cir. 2010).

First, as stated by the ALJ, Dr. Bordonaro's medical source statement was dated a year after she ceased treating Plaintiff; therefore, the ALJ properly concluded that the opinion did not apply to the entire time period in question. Second, the ALJ properly concluded that Dr. Bordonaro's opinion was not consistent with the overall record. (T. 19-20.) Although Dr. Bordonaro's notations did contain observations and reports of Plaintiff's decreased concentration; the notations did not support the extreme limitations imposed by Dr. Bordonaro in her medical source statement nor where the limitations supported by the medical opinion of Dr. Noia or the observations of providers at St. Joseph's Hospital as outlined here. *See Fox v. Colvin*, 589 F. App'x 35, 36 (2d Cir.

2015) (ALJ properly afforded treating physician less than controlling weight where treating physician's assessment was contradicted by other substantial evidence in the record, including plaintiff's testimony and the opinions of other medical sources).

Substantial evidence in the record supported the ALJ's determination that Plaintiff could perform simple unskilled work and handle routine stress of simple tasks involving goal-oriented work rather than production rate work. (T. 17.) Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Here, there is "more than a mere scintilla" of evidence in the record to support the ALJ's RFC.

The ALJ's RFC determination was supported by Dr. Noia's opinion, treatment notations from providers at St. Joseph's Hospital, and Dr. Bordonaro's treatment notations. As outlined herein, Dr. Noia opined Plaintiff was capable of understanding and following simple instructions and directions; performing simple and some complex tasks; maintaining attention and concentration for tasks; attending a routine and maintain a schedule; making appropriate decisions; and relating and interacting moderately well with others. (T. 285.) Also as stated herein, the ALJ did not err in affording more weight to the opinion of a consultative examiner. Dr. Noia's medical source statement was consistent with his own examination of Plaintiff and further consistent with mental status examinations performed by providers with St. Joseph's Hospital. The ALJ's RFC was also supported by Dr. Bordonaro's treatment notations which included mental status examinations, contained notations that Plaintiff did not

17

suffer from feeling of depression, and that Plaintiff's condition was stable, or improved, with medication. (T. 412, 414, 416, 418, 420, 422, 423, 424, 427-428, 429-430, 432, 434, 437, 439, 441, 445, 448, 450, 452, 454.)

Specifically, Dr. Noia's September 2012 opinion, and ultimately the ALJ's RFC determination, was consistent with Dr. Bordonaro's contemporaneous treatment notations. On August 15, 2012, Dr. Bordonaro indicated that Paxil was "working well" with no side effects. (T. 451.) Plaintiff reported to Dr. Bordonaro that her mood was "pretty good" and she was feeling less depression, sleeping six to eight hours a night, her energy level was "fair," and she enjoyed listening to local bands at a park and dancing. (*Id.*) Plaintiff also reported that she felt confused and had a hard time understanding things. (*Id.*) In Dr. Bordonaro's last treatment note, dated October 17, 2012, Plaintiff reported low energy and motivation, and that her mind wanders. (T. 454.) However, Dr. Bordonaro encouraged Plaintiff to avoid daytime napping, to get out of the house more often and socialize, and to look into volunteer work. (*Id.*)

Treatment notations from St. Joseph's Hospital further supported Dr. Noia's opinion, and the ALJ's RFC determination. As stated by the Commissioner, St. Joseph's Hospital assigned Plaintiff GAF scores of 70 and 75 in 2013, indicating mild symptoms. (Dkt. No. 10 at 11 [Def.'s Mem. of Law], *see* T. 354.) Further, as outlined herein, the mental status examinations performed by providers at St. Joseph's Hospital on November 28, 2012, and January 10 and 23, 2013, supported Dr. Noia's opinion and the ALJ's RFC determination. (T. 367-368, 392, 401-402.)

Therefore, for the reasons stated herein, and further outlined in Defendant's brief, the ALJ's RFC determination was supported by substantial evidence in the record.

18

Although a portion of the ALJ reasoning for affording weight to Dr. Bordonaro's opinion was misplaced, any error was harmless because the ALJ provided further support for her weight determination which was proper and overall her RFC determination was supported by substantial evidence in the record.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 28, 2016

William B. Mitchell Carter
U.S. Magistrate Judge